William R. Brennan, Jr.
The life tenant under a trust of 117.25 acres of land created by a will who was also making a controverted claim to ownership of the fee, and the administrator g. t. a. of the will, and one Ross, the attorney for the life tenant, entered into an agreement on August 22, 1958, relating to the manner of offering the property for sale and its maintenance pending sale. An offer having been received from a third party, Miltod Corporation, and the application of the terms of the agreement being in dispute, the administrator sought the advice and direction of the Surrogate’s Court (Surrogate’s Ct. Act, § 215). The proceeding resulted in a decision on July 22, 1959 approving the offer of Miltod Corporation at $1,600 per acre on the terms contained in the contract presented to the court (Matter of Jones, 19 Misc 2d 234). A decree accordingly was made on August 7, 1959.
The defendant in this action, Wicks, Avas made a party to that proceeding because of his claim of an enforcible contract for the purchase of the property and the Surrogate held that a determination of his alleged rights was an integral part of a final determination in the main proceeding (19 Misc 2d 234, 236, 237).
Wicks appealed from the decree of the Surrogate’s Court by a notice of appeal dated August 7, 1959. He made a motion for a stay of all proceedings pending appeal. Counsel thereupon entered into a stipulation that if the decree be affirmed, he was to pay such sums as might be awarded against him “ for costs of said appeal and for damages sustained by reason of the granting of such stay. ’ ’ It was agreed that prior to the making *783 of an order on the stipulation, Wicks was to file a surety company bond for $10,000 ‘ ‘ to secure payment of the damages * * * referred to in * * * this stipulation. ’ ’ An order was made accordingly on August 24, 1959.
The following November, the Appellate Division modified the decree by directing sale of the acreage to Wicks despite its finding that he did not have an enforcible contract to purchase the property, on the ground that his offering price yielded the highest net amount to the estate (9 A D 2d 778).
An appeal to the Court of Appeals was taken by the petitioners. On April 28, 1960, the Court of Appeals (8 N Y 2d 24, motion for reargument denied 8 N Y 2d 934) reversed the order of the Appellate Division and remitted the matter to the Surrogate’s Court for further proceedings. (It concluded that the Miltod offer would yield the highest net amount to the estate because no commissions would be payable under that offer.) In both appellate courts, costs were awarded to all parties out of the estate.
The Surrogate’s Court thereupon made its order on July 12, I960 implementing the decision of the Court of Appeals and on the same day a contract was made with Miltod which terminated in a conveyance on October 12, 1960.
This action followed. It is brought upon the aforesaid stipulation for the stay. It is sought to recover damages in excess of $10,000 consisting of such items as taxes paid upon the realty while the stay was operative, differences on apportionments, loss of use of the cash part of the purchase price and of interest on the purchase-money mortgage and related items.
The defendant, in addition to denials, pleads as a defense failure of the plaintiff Klapper, the administrator, to mitigate damages, and also asserts a counterclaim based upon alleged conspiracy between the plaintiffs and Boss to use the defendant’s offer for the property to procure a better offer from Miltod and that, to serve Klapper’s self interest as a broker, he induced his coplaintiff and Boss to enter said conspiracy to prevent defendant from purchasing the property.
This is a motion by the plaintiffs for summary judgment in their favor directing an assessment of damages, or, in the alternative, for partial summary judgment dismissing the counterclaim, or, dismissing the counterclaim under subdivision 5 of rule 109 of the Buies of Civil Practice for failure to state a cause of action.
At the outset, the defendant urges the. insufficiency of the complaint because there is no allegation of compliance with section 161 of the Civil Practice Act, which provides in part,
*784 An action shall not he maintained upon an undertaking given upon an appeal * * * until ten days have expired, since the service upon the attorney for the appellant and upon the sureties on such undertaking, of a written notice of the entry of a judgment or order” disposing of the appeal. (Porter v. Kingsbury, 71 N. Y. 588; Wasserman v. Maslon, 140 Misc. 847.) The contention is overruled. This is an action upon an express agreement of the defendant to pay costs of the appeal and the damages sustained by reason of the granting of the stay. The filing of a bond for payment of the damages sustained was required as security for such payment. The plaintiffs having elected to proceed solely against the defendant on his agreement, they are not required to join or proceed against the surety. (Cf. Ellensohn v. Haselbach, 17 Misc. 92, 93.) The defendant has a liability to the plaintiffs that is distinct from and may be greater than the liability of the surety (Erdle v. Bassett, 94 Misc. 666, 669).
The defendant further argues that liability under his stipulation is limited to taxable costs and disbursements, none of which were allowed against the defendant. This is a legally untenable position. Unless stayed, the plaintiffs (petitioners in the Surrogate’s Court) could have proceeded with the sale authorized by the Surrogate while the appeal was being prosecuted by the defendant (Matter of Meyer, 209 N. Y. 59, 65). To avoid this result the defendant expressly agreed to pay “ costs of said appeal and damages sustained by reason of the granting of such stay.” He agreed to furnish and did give security for $10,000 to secure payment of the “ damages ” part of his agreement. This was far in excess of any imaginable taxable costs and disbursements (Atlas v. Fidelity & Cas. Co. of N. Y., 124 N. Y. S. 2d 478, 480). One does not kill flies with elephant guns.
The defendant made his agreement. Its language is not limited to costs and damages which may be awarded on appeal. On the contrary, he agreed to pay “ damages sustained by reason of the granting of such stay.” The agreement is precise enough to subject him to the liability sought to be imposed. He is bound by it. If an instrument should not be extended by construction beyond its plain terms (Kmets v. De Ronde, 191 App. Div. 142, 152), neither should it be restricted by construction to less than its plain terms. With but slight revision the language of the Court of Appeals in Self Serv. Super Market v. Harris (3 N Y 2d 615, 622) is entirely applicable to the contentions of the defendant with reference to his agreement. The court there said: “ Concerning the undertaking for the stay *785 on appeal to the Court of Appeals the Special Term Justice said, in granting the judgment now under review: 1 The giving of this undertaking was no idle ceremony. It was intended to comply with section 1443 of the C. P. A. and to conform to the direction and order of the Appellate Division. It was not signed, acknowledged, approved by a justice of the Appellate Division and filed, but it was intended to secure a stay. It was treated as an appropriate and effectual instrument for that purpose. There was forebearance on the part of the plaintiff because of it. The undertaking was not an illegal one, but one founded on a good consideration. A sense of justice demands its enforcement (Goodwin v. Bunzl, 102 N. Y., 224). In Wing v. Rogers (138 N. Y., 361 at p. 366) the court said: “ The defendant in this case is liable if the instrument which he executed secured for his principal the advantage and benefits which the court had in view when granting the order, and which were fairly within contemplation of the parties.” And it was further said 138 N. Y. at p. 367: “ But we have a right to look at the recitals therein and the legal proceedings out of which it grew in order to determine its real consideration and conditions ” (see also 11 O. J. S. Bonds, sec. 40, p. 421; Union Bank of Brooklyn v. American Bonding Co., 174 App. Div., 542) ’ ”.
The counterclaim is stricken. Briefly summarized, it alleges that the plaintiffs and Ross entered into the agreement of Augrnst 22, 1958, referred to at the outset of this opinion and that pursuant thereto they submitted the property to defendant as a prospective purchaser after receiving Miltod’s offer and invited him to meet or better it; that plaintiffs obtained from defendant a better offer; and that the plaintiff administrator in furtherance of his own self interest and contrary to the agreement used defendant’s offer to get better bids from Miltod and deprived defendant of the opportunity to better the Miltod bids and prevailed on the other parties to agree to conspire with him to accomplish this objective. Damage is alleged of $10,000 which is sought solely from the plaintiff administrator.
These facts were presented to the Surrogate in the proceedings above referred to. Defendant there pleaded that by seeking a better offer from Miltod than that made by defendant, the plaintiff administrator had “ acted unfairly and improperly in disregard of respondent’s [defendant’s] rights as a bona fide purchaser ’ ’ and that he had not been given the opportunity to meet the better offer; he sought affirmative relief based on his contentions. He made the administrator’s self interest an issue before the Surrogate, the Appellate Division and the Court of Appeals.
*786 There is no question here of an enforcible contract with the defendant. The Surrogate found and the Appellate Division tersely agreed that “ Appellant [defendant] does not have the enforcible contract to purchase claimed by him” (9 A D 2d 778). Indeed, in reversing the Appellate Division’s order directing the sale of the property to the defendant, the Court of Appeals necessarily decided that he had no right to acquire it.
There was no breach of any duty owed by the plaintiffs herein to the defendant. If, as defendant urges, they were duty bound to the estate to accept his offer, the short answers are that it is the estate that has the corresponding right, not the defendant, and that the courts in the earlier litigation did not find such a duty. If the theory is that there was an obligation not to entice defendant into making a bid which was then allegedly used to procure higher Miltod bids, the answer is equally obvious — the plaintiffs owed defendant no such duty. It is appropriate to note that the defendant has cited no authority to sustain his counterclaim. Furthermore, it appears from the record and briefs in the prior proceedings that much the same arguments were there urged. If the disposition made by the Court of Appeals is not res judicata in the instant action (and there is no need to decide this issue), it is most certainly entitled to great weight on this motion for summary judgment as a matter of stare decisis.
There remains the matter of the defense of mitigation pleaded as a complete defense, that the plaintiff administrator made no effort to avoid or mitigate the damage resulting from the delay caused by the stay. Although no evidentiary facts have been adduced in support of this defense, it is obviously not a complete defense and in any event relates solely to the quantum of damages sustained by the plaintiffs. Defendant may, of course, try the issue of amount of damage upon the assessment hereby ordered.
The answer is stricken to the extent indicated and summary judgment in favor of the plaintiffs and against the defendant is hereby ordered. The defendant’s motion to examine the plaintiffs before trial is denied except as to the issue of damages.
Settle one order on notice accordingly setting the cause for assessment of damages at Trial Term, Part I, on the 5th day of May, 1961, subject to the Justice there presiding; and providing for the examination before trial on the issue of damages at least three weeks prior to said date unless counsel shall otherwise stipulate.